KANSAS PACIFIC RAILWAY CO. v. GRANVILLE D. POINTER.

1. NEGLIGENCE OF RAILWAY COMPANY; *Management of Moving Train.* Where a person has been run over by a railroad train and injured, in an action for damages therefor a finding that the injury was caused by the gross negligence of the company will not be set aside when it appears that he was run over by a train consisting of a locomotive, tender, one baggage and two passenger cars, which was started backward over a public crossing, in a populous city, with the brake on the engine out of repair and useless, with no brakemen at the other brakes, with no flagman or other person at the rear of the train, or at the crossing, to warn persons of their danger, and no one on the train except three persons, who were all on the locomotive, without the blowing of any whistle, though with the ringing of a bell, and along a track which from the locomotive could not be seen for a distance of from forty to fifty feet from the rear of the train.

2. ———— *Ordinary Negligence.* Where the term *negligence* is used without any qualifying word, it will be generally understood that *ordinary negligence* is meant.

3. ———— *Contributory Negligence.* Where the plaintiff is guilty of ordinary negligence, contributing directly to the injury, he cannot recover, except perhaps in cases of wanton and willful injury.

| 14 | 37 |
|----|-----|
| 41 | 407 |
| 14 | 37 |
| 44 | 589 |
| 44 | 591 |
| 14 | 37 |
| 45 | 379 |
| 46 | 143 |
| 14 | 37 |
| 51 | 379 |
| 52 | 553 |
| 53 | 763 |
| 14 | 37 |
| 55 | 502 |
| J55 | 660 |
| 14 | 37 |
| 56 | 763 |
| 14 | 37 |
| 57 | 769 |
| 14 | 37 |
| 60 | 823 |
| 14 | 37 |
| 65 | 682 |
| 14 | 37 |
| 67 | 260 |
| 14 | 37 |
| 69 | 628 |
| 14 | 37 |
| 78 | 40 |
| 78 | 628 |
| 79 | 415 |
| e80 | 460 |

4. ——— Contributory negligence on the part of the plaintiff is matter of defense; and if the record shows negligence of the defendant, and is silent as to the conduct of the plaintiff, a judgment for the plaintiff will be upheld.

5. SPECIAL FINDINGS; *Practice.* Where any one of the findings in a special verdict is not specific and certain, either party may require that it may be made so before the jury is discharged.

6. ——— Where a finding, either regarded by itself or in the light of other findings, is not specific and certain, and the jury is discharged without any objection to it, or any effort to have it made specific and certain, it will thereafter be construed against the party in whose favor it is found.

7. ——— *Contributory Negligence; Construction of Findings.* In this case the jury found that the defendant was guilty of gross negligence, immediately causing the injury; they also found that the plaintiff was guilty of negligence contributing to the injury, without specifying what degree of negligence, or whether proximately or remotely contributory: *held*, that it was apparent from the other findings, and the instructions of the court, that they intended only such slight negligence as was consistent with a right to recover compensation.

8. NEGLIGENCE; *When a Question for Jury.* Where the facts are disputed, negligence is a question of fact for the jury: where the facts are undisputed, and but one deduction is to be drawn from them, it presents a question of law for the courts; but where the facts are undisputed, but are of such a nature that different minds will draw different conclusions from them as to the reasonableness and care of a party's conduct, it is a proper question for the determination of a jury.

9. CONCURRING VERDICTS. Where three successive juries have, on a doubtful question of negligence, found for the plaintiff, this court should be clearly convinced of the existence of error before it orders the setting aside of the third verdict.

*Error from Atchison District Court.*

THIS case was here once before, and is reported in 9 Kas., 620, where a full statement of the pleadings, and of the main facts will be found, pp. 621, 622. On being remanded to the district court, another trial was had, at the June Term 1873. The facts, as proven on this trial, were set forth in a special verdict, which will be found in the opinion, *infra.* The jury found for the plaintiff, *Pointer*, and assessed his damages at $5,000. The *Railway Company* brings the case here on error.

*J. P. Usher*, and *T. A. Hurd*, for plaintiff in error:

1. The jury, by their 12th finding, found that Pointer's injury was caused by the want of ordinary care and by the gross negligence of the defendant in the manner of running the train, and by the failure of the defendant to keep a lookout of any kind for persons who might be on the track—thereby explaining *in what respect* there was a want of ordinary care; and in the 14th finding they further explain what was meant and intended by the language used in the 12th finding; and they further, by the 20th finding, find that the train was handled on that occasion in the usual manner in which said train was handled while backing up to be switched, and was manned as was usual in operating such train; and by the 8th finding, find that the bell upon the engine was rung until the collision with the plaintiff. Taking these findings together, they show on what facts the jury predicated the finding of negligence on the part of the railway company. We contend that these findings of fact do not show negligence on the part of said company. The jury has found the facts on which they predicated negligence on the part of defendant below, and such facts do not in law constitute negligence. (39 N. Y., 61; 40 N. Y., 9, 34; 42 N. Y., 468.) The defendant below was not bound to keep a flagman on its track to warn persons off, nor to keep a lookout from the rear end of the train for like a purpose, nor keep a man upon the train for like purpose. The persons in charge of the train were not bound to anticipate defendant in error upon the the track, and were not bound to make any provisions for his safety; and if they had seen him, they were not bound to use any care toward him until they had reason to suppose that he would not take care of himself. Had they seen him, they would have had the right to suppose that he was a man of good sight and hearing, and that he would take reasonable care to protect himself. The bell was rung in time for him to escape, and he was bound to have left the track or suffer the consequences. (1 Dillon, 579; 39 N. Y., 358; 27 Barbour,

22; 40 N. Y., 34; 42 N. Y., 468; 10 Iredell, 402; 55 Ill., 379; 25 Mich., 274.) The question whether this ground was used by the public to walk across or go upon it, gave the public no rights there; and whether plaintiff in error knew the ground was so used, or permitted the same, was entirely immaterial.

2. By the 13th finding the jury find that Pointer was guilty of negligence which contributed to the injury he received. This finding is decisive of the case, and the judgment below must be reversed and a final judgment for the plaintiff in error entered: 39 N. Y., 358, 368; 41 N. Y., 296; 45 N. Y., 660; 40 N. Y., 34; 29 Iowa, 562; 26 Iowa, 363; 18 Iowa, 280; 20 Iowa, 338, 562; 24 Iowa, 515; 21 Iowa, 15. If there is any doubt whether the jury by the 13th finding intended to find, that the negligence of the defendant in error contributed proximately to his injury, that doubt is removed by the 9th, 17th, 18th, 19th and 20th findings. The last-mentioned findings are fully sustained by the evidence.

3. Even if the 13th finding be omitted, the facts stated in the 17th, 18th and 19th findings defeat the action. The facts therein found show culpable negligence on the part of defendant in error. 55 Ill., 379; 1 Dillon, 579; 39 N. Y., 61; 25 Mich., 274.

If there is negligence on the part of both parties which contributed in any degree to the accident, or if plaintiff below was guilty of negligence, he cannot as a matter of law recover, although defendant also may have been negligent, or may have neglected to perform some statutory requirement. (34 Iowa, 153; 25 Mich., 274; 1 Dillon, 579.) The evidence shows that the plaintiff was walking laterally upon the railroad track *owned by the defendant*, and further shows that he did not look back to see whether cars were approaching; that he gave no attention to his own safety; and that except for his own gross carelessness in going upon and walking along the track, without using all his faculties to discover approaching trains of cars, he would not have been injured. The rule of law upon this point is, that it is negligence for an intelli-

gent person to be upon the track of a railroad constantly used, unless for the purpose of crossing the same; and if a person travel along a railroad track where cars are frequently passing, even for the purpose of crossing a public highway, he is guilty of such negligence as will prevent a recovery for any injury he may receive, unless from gross and wanton negligence on the part of the employes of the railroad company; and the fact that plaintiff was run over is not presumptive evidence of such negligence on the part of the employes. 55 Ill., 379; 25 Mich., 274; 33 Ind., 335; 36 Md., 366; 7 Lansing, 11; 52 N. Y., 215.

4. The ground on which the plaintiff was injured was not a public street. It is true, the council of the city in 1863 passed an ordinance declaring certain lands to be a street, but no damages were ever assessed or paid as required by law, and nothing was done toward establishing a street beyond the mere passage of the ordinance; (see 21st finding.) We submit, that this ordinance did not establish a street; and if it did, the defendant in error had no right to go upon and walk laterally upon it. He avers in his petition that this land belonged to plaintiff in error. 5 Wall., 413; 55 Ill., 379.

5. The 3d instruction, in these words—

"If the defendant was running its train in the limits of a populous city, where it was reasonable to anticipate the presence of many persons on the track, then its duty was to keep a vigilant look-out to avoid injury to persons on the track, and any violation of that duty would be negligence on its part; and if the plaintiff in this case was injured by reason of such negligence, and through no want of reasonable care on his part, then the plaintiff is entitled to recover full compensatory damages for all injuries so sustained"—

was improper for any form of verdict, and the court erred in giving it. And the following instructions, asked by plaintiff in error, were proper, and the court erred in refusing to give them, to-wit:

"4th. The plaintiff has shown by his own testimony that he stepped onto the track of defendant a short distance in advance of the train, by which he was injured; that he pro-

4—14 KAS.

ceeded down the track in the same direction in which the train moved, and that after he stepped on the track he did not look behind him until the train was close upon him; and that if he had looked at any time after he stepped upon the track he could have seen the train if it was approaching, and it is the duty of the jury to so find.

"8th. The defendant had the exclusive right to the use of its track at the point where the injury is testified to have occurred, and was not bound to anticipate the presence of the plaintiff or any other person on its track at that point, or that they would walk there in the way of its operation of its road.

"11th. If the servants of the defendant, upon the starting and backing of the train from the depot, rung the bell and continued to ring the same; and if, as soon as they ascertained the plaintiff was in danger, they stopped the train as soon as it could be done with the usual and ordinary appliances, then these facts tend to prove due care on the part of the defendant.

"17th. If the plaintiff went on the track of the defendant, without the precaution of looking out for approaching trains, and if he neglected to use all his faculties to discover the danger he was in from approaching trains, it was gross and culpable negligence on his part."

The judgment upon the special verdict is contrary to law. The judgment is against the evidence. The further findings of fact asked by defendant below were warranted by the evidence, and the court erred in not directing the jury to make further findings.

*Stillings & Fenlon,* for defendant in error:

The findings in this case show, first, that defendant in error went upon the track of plaintiff in error on his way to the ferry-landing at a place usually frequented and used for such purposes by men, women and children; that before going upon the track he looked and saw that no train was in motion: second, that the train which caused the injury was started in motion after he was on the track, and the employes who moved the train did not see defendant in error—so that they must have started the train in motion without looking to see whether the track was clear or not: third, that the train

was moved backward without brakemen, or any persons at or near the rear end of the cars to look out for or warn any person of danger, or to check the train if necessary, and at a place where there was much noise and confusion and the blowing of the whistle of the Missouri Pacific engine at a distance of 100 feet away: fourth, that the gross negligence of plaintiff in error in the manner in which the train was so operated was the immediate cause of the injury. It is claimed, however, by plaintiff in error that, although guilty of gross negligence, it is not liable, because the findings show Pointer guilty of negligence contributing to the injury. The acts of Pointer which the jury say are negligence contributory to the injury are set out by them: first, that Pointer, although he looked before stepping on the track to see that no train was coming, failed to turn round and look back for this train in the brief time he was going along and across the track: second, that Pointer could have gone further without getting on the track of the railroad, and then gone directly across the track. But the jury make the distinction as to whether the negligence on the part of Pointer was proximate, or remote, as clearly as could be expected of them in the preparation of a special verdict. They say that the negligence of the plaintiff " was gross," and was " the immediate cause of the injury," and, while they do not in so many words define the negligence imputed by them to the defendant in error as remote, the qualifying words used by them in the one case, and omitted in the other, show clearly that they intended to so find.

Counsel for plaintiff in error do not, if we correctly understand them, claim but that the company would be liable on the findings but for the acts of negligence set out in the verdict claimed to be contributory negligence on the part of defendant in error, but claim that he is barred of recovery by the acts of negligence imputed to him. In this we think counsel are wrong. The rule, as laid down in 22 Ohio St., p. 20, would apply, and that the case, as shown by the findings, comes within the exceptions to the rule of contributed negligence barring recovery. The same principle is sustained

by this court, the court holding that in order to defeat plaintiff's claim, his negligence must "proximately contribute to the injury." 10 Kas., 472.   And see 3 M. & W., 248; 41 E. C. L., 426; 65 Barb.; 67 Penn. St.; 13 Wall., 270; 49 N. Y., 521.   That the backing of a train through a place frequented by the public, without any precaution being taken to guard against injury to men, women or children, and that too, at a place where the blowing of whistles and noise would likely prevent persons from observing it, is properly characterized by the jury as gross carelessness.

There is not a single finding of fact by the jury which there is not some evidence tending to establish.   This being the case, by repeated decisions of this court, the court is not at liberty to set aside such findings, it being the sole province of the jury to determine whether a fact is established, when there is any evidence tending to prove such fact.   And as this court has already laid it down as law, that an action wherein it is found that the proximate cause of the injury complained of was the negligence of the defendant can only be defeated when it is also found as matter of fact that the plaintiff "proximately" or immediately contributed to his own injury, and as there is a finding based on evidence that the "immediate," the "proximate" cause of the injury here was the negligence of plaintiff in error, and no finding that Pointer "proximately" contributed, it seems plain to us that this court is bound by its own rulings to sustain the judgment herein.

This is the second time this case has come to this court by appeal on behalf of the railroad company, and we submit that the jury, having twice found for defendant in error, is entitled to some consideration in this court.

The opinion of the court was delivered by

BREWER, J.: This was an action brought by Pointer in the district court of Leavenworth county, for personal injury by being knocked down and run over by the cars of plaintiff in error, near the railroad depot in the city of Leavenworth,

on the 4th of February, 1870. The venue was changed to Atchison county, and the cause was tried before a court and a jury, in June, 1873, and the jury returned the following special verdict:

"We the jury find for a special verdict in the above entitled action, the following:

"*First,* That on or before the 4th of February, 1870, the plaintiff was passing across and along the railroad track of the defendant, in that part of the city of Leavenworth traversed by the road of the defendant, and while so passing at or near the junction of Water street with Chestnut street, which streets are nearly at right angles with each other, the plaintiff was knocked down and run over by the cars of the defendant. That two passenger cars, one baggage car, and a locomotive tender passed over the body of the plaintiff, and he was pulled out from between the wheels of the engine and tender in a bruised, wounded and otherwise injured condition of body, and in an unconscious state of mind.

"*Second,* That by said cars knocking him down and running over him, the plaintiff had his shoulder dislocated, and had two of his ribs broken. That in consequence of the injuries then received by the plaintiff, he suffered great pain and agony for a long time, and was confined to his bed for a period of about three months, and remained feeble and weak for a period of about six months, and during all of said last-mentioned time was under the care and direction of a physician. That the plaintiff is a man between fifty and sixty years of age, and in consequence of said injuries his health and strength are permanently impaired.

"*Third,* That it was necessary for him to procure said medical attendance, and the cost of the same was five hundred dollars.

"*Fourth,* That the road of the defendant at the place the plaintiff was struck and injured, was at that time commonly used by persons for passing over and across the same from the city of Leavenworth to the ferry-landing, the same being a public ferry across the Missouri river at that point, and the only means of travel at that point between the west and east banks of the Missouri river; and the same had been so used before the location of the defendant's road at that place, and continued to be so used, with the knowledge of and without objection by the defendant, up to and including said date, and that there was no way of reaching the ferry except by cross-

ing the road of the defendant at that or some point near that place.

"*Fifth*, That the streets of the city had never been graded or improved at that or any other place leading to the ferry-landing, so as to show on the surface of the ground where they were.

"*Sixth*, That the injuries occurred to the plaintiff at a place at which persons were in the habit of passing and repassing continually, with the knowledge and without objection on the part of the defendant.

"*Seventh*, That the place where the plaintiff was injured was on ground which had been used by the public as a thoroughfare from the city of Leavenworth to the landing of the public ferry across the Missouri river ever since the year 1855 up to and inclusive of the day of the injury, and which ground formed part of a tract of territory which, by ordinance of the city of Leavenworth, approved the 21st of October, 1863, was created into a street of said city, designated as Water street.

"*Eighth*, That the train so moved was being backed southward with an engine, upon which the brake was out of repair, so that such brake could not be worked, and was wholly useless to aid in stopping the train; that there were no brakemen at any of the other brakes on the train to use them in controlling the train, and no flagman or other person or thing on the train to warn persons of danger or to warn the engineer; nor was there any flagman at any point on the track between the depot from which the train moved to the place where the plaintiff was injured, nor was there any whistle blown on that train, but a bell was rung by them.

"*Ninth*, That the plaintiff at the time of the injury was with his back to the approaching train, at a point where there was much noise other than that made by the train, and was unconscious of the approach of the train. That when approaching the road near the same, plaintiff looked up the track toward the depot, and no train was then moving.

"*Tenth*, That if there had been a brakeman or flagman on the rear end of the train, or at any point on or near the track and near the moving train, he could easily have seen the danger the plaintiff was in in time to have warned the engineer and caused the train to stop before the injury, or could have apprised the plaintiff of the impending danger in time for him to escape.

"*Eleventh*, That the train was moving backward, and there was no person on the rear end of the train to warn persons of danger, or to notify the engineer to check the train.

"*Twelfth*, That the injury to the plaintiff was caused immediately by the defendant's failing to use ordinary care, and by its gross negligence in the manner of the running of the train at that time and place, and by the failure of the defendant to keep a lookout of any kind for persons who might be on the track.

"*Thirteenth*, That the plaintiff was guilty of negligence contributing to the injury.

"*Fourteenth*, That the injury to the plaintiff was caused by a failure on the part of the defendant through its agents and servants to use ordinary care in moving the locomotive and train at that time and place. That the place where the plaintiff was injured was within the corporate limits of the city of Leavenworth, which was a city of over twenty thousand inhabitants at that time, and at a place where persons, men, women and children, had been and were in the habit of passing and crossing with the full knowledge of the defendant, and without any protest or objection on its part.

"*Fifteenth*, That the only employes of the defendant on the train at the time the plaintiff was injured were three men —an engineer, a baggage-master and a yard-master—and these three employes were on the engine, the most remote point on the train from the rear end thereof, and from which place they could not see the track for forty or fifty feet from the rear end of the train.

"*Sixteenth*, That on or before the 4th of February, 1870, the Kansas Pacific Railway Company was the owner of and was operating its railroad from the city of Leavenworth to Lawrence.

"*Seventeenth*, That the ground occupied by the aforesaid Railway Company, running south from the depot in Leavenworth, was formerly uneven, and only passable for foot passengers. That the Railroad Company graded said ground, making it level for the purpose of laying their track, and that in so doing, in conjunction with the Missouri Pacific or Missouri River Railroad, so graded said ground about the width of two hundred feet from and running parallel with the Missouri river at the point whereat or about the said injury occurred, and that there was a space of level ground between the Pacific tracks and the Kansas Pacific Railway tracks of fifty feet, upon which foot passengers could walk at

the said point, and that on the west side of the Kansas Pacific track, and running parallel thereto, was a road that was passable for wagons and teams; said road was about thirty or forty feet wide, and bounded on the west by a precipitous bluff about fifty feet high. Said road ran south about one thousand feet from the depot, and was used at and previous to the time of the plaintiff's injury, as a thoroughfare by which the public passed to the ferry across the Missouri river, a point nearly opposite the landing of the public ferry crossing the Missouri river between Kansas and Missouri, at which point the travel crossed the track of the Kansas Pacific and Missouri Pacific railways to reach the aforesaid ferry.

"*Eighteenth*, That the plaintiff could have reached the ferry by keeping west of defendant's 'tracks' to a point directly opposite the ferry landing, and thence east across said railway, not more than ten feet wide, to said ferry.

"*Nineteenth*, That the plaintiff was passing upon the track with his head down, and persons near by, apprehending that he was in danger, called to him with a loud voice warning him of his danger—these persons standing, one upon the cars of the Missouri Pacific Railway Company, about fifty feet away, and the other in the space between the tracks of the Missouri Pacific and the Kansas Pacific railways. That the whistle of the locomotive of the Missouri Pacific Railway was blown, which was about one hundred feet from the plaintiff. That his attention was not attracted by the signals of warning, nor did he look up, but kept in the same position with head bent forward until he was struck in the back by the 'bumper' or 'drawhead' of the rear car upon the end next to him, when, from the force of the blow he fell forward, when the train—two passenger cars, one baggage car, and the engine and tender—passed over him.

"*Twentieth*, That the defendant's train was handled on the day of the injury in the usual manner in which said train was handled while backing up to be switched and left on the side track. The train was in charge of the yard-master, and neither he or any of the persons on the train knew the plaintiff was upon the track, and in the way of the train, until after his injury.

"*Twenty-first*, That on the 21st of October, 1863, the council of the city of Leavenworth passed an ordinance laying out a street called 'Water street,' and there is no evidence that anything more was done in the premises by the authority aforesaid.

"We the jury find for the plaintiff, and assess his damages at five thousand dollars."

Before the jury was discharged, the defendant requested in writing that the court direct the jury to make further findings of fact, which was refused. The motion for a new trial was duly made by the defendant, and overruled, and defendant's motion for judgment was also overruled. The court rendered a judgment in favor of Pointer upon such special verdict, for the sum of five thousand dollars, and costs of suit, and defendant brings its petition in error in this court.

Upon this case two principal questions arise: First, is such negligence shown on the part of the company as, independent of the conduct of Pointer, will render it liable for the damages sustained? and second, does there appear such contributory negligence on the part of Pointer as will defeat his recovery? With the first question we have little trouble. The jury found specifically (12th finding) that the injury was caused by the gross negligence of the company. And if we turn to the other findings in which the circumstances of the injury are narrated, or to the testimony in the case, the whole of which is before us, we find ample warrant for this finding. A train consisting of two passenger and one baggage car, a tender and locomotive, is started backward over a public crossing in a populous city, with the brake on the engine out of repair, and useless, with no brakemen at any of the other brakes on the train, with but three persons on the train, and all of them in the locomotive, with no flagman on the rear end of the train, or at the crossing, to give warning to persons on the track, or to the engineer, without the blowing of a whistle, (though with a ringing of a bell,) and along a track which from the locomotive could not be seen for a distance of forty or fifty feet from the rear of the train. Add to this, that there was at the time much noise other than that made by the train, and we think a jury might properly say there was gross negligence.

*1. Management of moving train. Gross negligence.*

The other question is embarrassing and difficult. By the 13th finding the jury say "that the plaintiff was guilty of

K. P. Rly. Co. v. Pointer.

2. Ordinary negligence. negligence contributing to the injury." Did they mean thereby such negligence as will defeat a recovery? Do the facts, as shown by the other findings, or the evidence, disclose such negligence? As a general rule, whenever the word "negligence" is used without any qualifying term, we understand that ordinary negligence is meant; and 3. Contributory negligence. where the triple distinctions of slight, ordinary, and gross negligence are recognized, as in this state, ordinary negligence on the part of the plaintiff will, except perhaps in the case of wanton and willful injury, defeat a recovery. It is settled in this state that where the negligence of the plaintiff is but slight, or only remotely contributing to the injury, it will not defeat a recovery. *K. P. Rly. Co. v. Rollins*, 5 Kas., 167; *Sawyer v. Sauer*, 10 Kas., 466. It seems to us also correct to hold, that the *onus probandi*, as to the negligence of the plaintiff, is on the defendant; that if the record shows negligence on the part of the defendant, and is silent as to the conduct of the plaintiff, it makes out a case for recovery. We are aware of contrary decisions, and that in some states it is held that the burden is on the plaintiff to show affirmatively that he exercised due care, and was without fault. But if it is shown that a party has done wrong, and caused injury thereby, is not a *prima facie* case for compensation made? Logically, the wrongdoer should always compensate, and the wrong and the injury always entitle to relief. When the wrong of both parties contributes to the injury, the law declines to apportion the damages, and so leaves the injured party without any compensation. This is not strictly justice. The wrongdoer causing injury ought not to be released from making any compensation, simply because the injured party is also a wrongdoer, and helped to produce the injury. But many considerations, especially the difficulty of correctly apportioning the damages, and determining to what extent the wrong of the respective parties was instrumental in causing the injury, uphold the rule so universally recognized, that where the wrong, the negligence of both parties, contributes to the injury, the law will not

afford any relief. But if the wrongdoer ought always to compensate for the injury he has wrought, and is relieved from the obligation to compensate only by the fact that the wrong of the injured party helped to cause the injury, it is incumbent on him to show such wrong. It is matter of defense, to avoid the consequences of his own wrong. In the case of the *U. P. Rly. Co. v. Hand,* 7 Kas., 388, the question was incidentally noticed, and the intimation was in favor of the views herein expressed. See also Shearman & Redfield on Negligence, §§ 43 and 44, and cases cited in notes, and the late case of *Railroad Company v. Gladmon,* 15 Wallace, 401, where the supreme court of the United States lay down the rules as given above. It seems to us to follow from this, that where the special verdict shows an injury caused by the gross negligence of the defendant, a recovery must be sustained, unless it is also apparent that there was such contributory negligence as to relieve the defendant of responsibility; and that where it is uncertain whether such negligence is apparent, the doubt must be resolved against the defendant. In this case negligence and contributory negligence were not matters collateral and subordinate to the main issue, but were the vital and principal questions. To them the attention of counsel was mainly directed. The degree of negligence essential to defeat a recovery had been already settled by this court, and was doubtless known to counsel. The instructions are full of references to the different degrees of negligence. The jury specified in their verdict the degree of negligence of which they found the defendant guilty, and declare that it was the immediate cause of the injury. If any of the findings were not sufficiently definite and certain, either party could have called the attention of the court to it before the discharge of the jury, and had it made so. *Arthur v. Wallace,* 8 Kas., 267. And if the party whose interest it is to have it made definite and certain fails to do so, the omission will be taken against him in the construction of the finding. At the time this verdict was returned, the company objected that it was partial, incomplete, and inconsistent,

*5. Special verdicts.*

and specified a number of points in which it desired correction, but said nothing as to this 13th finding. It appeared to be content with it. Turning now to the verdict, and we find that after the separate findings of fact, and as a part of the verdict, the jury return as follows: "We the jury find for the plaintiff, and assess his damages at $5,000." It appears from this, that the jury did not mean by the 13th finding to attribute to the plaintiff such a degree of negligence as would defeat his recovery. They intended only such slight negligence, or negligence so remotely contributory to the injury, as was consistent with his right to compensation. It may be said that this was in effect a general verdict, and that this the jury were not at liberty to return where a special verdict had been ordered. This may all be true; but it does not affect the question we are now considering, viz., the intent of the jury. They failed to specify the degree of negligence of the plaintiff—what degree did they intend—and upon this question of intent this *quasi* general verdict strongly bears. Nor can it be argued that this general finding was returned in ignorance of the law, and that the jury must have supposed that the mere negligence of the defendant gave a right of recovery independent of the conduct of the plaintiff. By the first instruction given, at the instance of the plaintiff, they were told substantially that the plaintiff could not recover if the injury resulted from his own negligence, but that slight negligence on his part would not defeat a recovery. To a similar effect is the third instruction given at the like instance. These instructions, and the general finding, point clearly to the intention of the jury in the 13th finding, and show that they contemplated only that slight negligence which is consistent with the right to compensation. Again, it seems that the last instruction given at the instance of the defendant throws some light upon this question. That instruction is as follows:

7. Construction of findings. Instructions and testimony.

"The fact that persons were upon the track or yard of the defendant before, was no license to the plaintiff to be there, and was no justification for the plaintiff being there;

and he was guilty of negligence for being on the track, if the jury find that he was on the track."

As without dispute the plaintiff was on the track, when struck by the train, of course the jury could not find otherwise than that he was guilty of negligence. It is unnecessary to inquire whether this be good law or not, for surely it is a proposition of which *the railroad company* has no cause of complaint. It is enough now that it serves to indicate upon what the 13th finding was based. As it was an open question whether the place of the accident was a public crossing, it can hardly be that the court intended to say to the jury, that, though this were a public crossing, the presence of the plaintiff on the track was such ordinary contributory negligence as, notwithstanding the gross negligence of the railroad company, would defeat a recovery. It seems to us therefore that the jury intended by this 13th finding only such slight negligence as does not bar the right to compensation.

But the solution of this question by no means removes the difficulties in deciding the case. It is earnestly insisted by counsel, that the facts in reference to the conduct of the plaintiff (defendant in error,) as they appear from the other findings, as well as from the testimony, show that culpable negligence on his part which will relieve the company from responsibility. It seems to us matter of great doubt, as we read the conduct of the plaintiff, as narrated either in the findings or the testimony, whether this claim of counsel is not correct, and whether plaintiff was not so negligent as not to be entitled to compensation. And perhaps this doubt is our best justification for upholding the verdict. This question of negligence is said to be a mixed question of law and fact. When the facts are disputed, it makes a question for the jury. When the facts are undisputed, and but one deduction is to be drawn from them, there is simply a question of law for the court. But where the facts, though undisputed, are such that when taken singly or in combination different minds will come to different conclusions as to the reasonableness and care of the party's conduct,

8. Negligence, when a question for the jury.

the question is one which may properly be left to the determination of the jury. *Rld. Co. v. Stout*, 17 Wallace, 657; *Detroit & W. Rld. Co. v. VanSteinberg*, 17 Mich., 99. In this case three separate juries have found for the plaintiff,

9. Concurring verdicts. and that, notwithstanding any imputations that could be made on his conduct, he was entitled to compensation. While we are not disposed, even if it were possible, to avoid any responsibility that properly belongs to us, or leave with a jury the burden of determining questions which we ought to decide, and while we should never permit the perpetration of a glaring wrong upon a party, no matter how many successive juries should attempt it, yet the unanimous judgment of thirty-six intelligent, candid men, as to the reasonableness and care of a party's conduct at the time of an injury, ought to have no little weight with us.

We have outlined, in considering the first question, the conduct of the company. A similar outline is proper as to that of the plaintiff. It appears that there is a space south of the old depot in Leavenworth about 1,000 feet in length, and 200 feet in width, shut in between the Missouri river on the east, and a steep bluff on the west. At the lower end of this space was, at the time of this injury, and had been for years, a grist-mill built against the bluff, and also at times the landing place of the ferry-boat. The boat changed the landing-place from time to time to accommodate itself to the different changes of the water, so that only part of the time did it land at or near this space. Over this space the Missouri Pacific Railroad and this defendant had constructed four or five tracks, which were used in the making-up of the trains, the tracks of the Missouri Pacific Road being next the river, and those of the defendant near the bluff. At the northwest corner of this space two streets came together, and prior to any occupation by the railroad companies the city had passed an ordinance for the opening of a street from the junction of these streets southward over this ground. But nothing more had been done toward securing the appropriation of the ground for street purposes. Both before and sub-

sequent to the occupation by the railroad companies, and at the time of this injury, there was a traveled way from the junction of the streets across this space, and over the tracks of the companies, at the ferry landing, and the traveled way the plaintiff was going to the ferry at the time he was run over. Between the tracks there was ample space and level ground for one to walk in safety, and west of this defendant's track, and close to the bluff, was a carriage-way which ran along the whole length of the space, and crossed the track at right angles at the mill. The plaintiff could have walked along this carriage-way, or between the tracks, and been out of danger, except at the very moment of crossing. Instead of doing this, he got on to the track at about the junction of the two streets, and walked southward on it toward the ferry. At the time he got on to the track he looked, and no train was in motion. As he passed down the track the defendant's train started out from the depot, and the engineer on the Missouri Pacific train seeing plaintiff's danger whistled to alarm him, and the yard-master of the Missouri Pacific Company shouted and tried to attract his attention, but in vain. From this outline it can but be seen that the plaintiff was guilty of some negligence, that he did not act with the highest prudence. Indeed, as before remarked, honest minds might well differ as to whether his negligence was not so great as to disentitle him to relief. In comparing however the conduct of the two parties, it will be generally conceded that the negligence of the company was of a higher degree, and a grosser character, than that of the plaintiff. This case must be distinguished from those where a party approaches and crosses a track without looking to see whether any train is coming; for here the plaintiff looked, and not only did he see no train coming, but in fact there was none. The train started after he got on. Nor must it be confounded with those cases in which the injury occurs on ground in the exclusive occupation of the railroad company. It was on ground of which the public and the company were in joint occupation — on ground which, without objection by the com-

pany, the public was occupying and using as a street, over which the plaintiff was then passing on his usual way to his home, on the east side of the river. For a case which, while its facts are not altogether similar, has many elements in it to make it a most appropriate citation in this, see *Butler, Adm'x, v. The M. & St. Paul Rly. Co.,* 28 Wis., 489. See also, *Railway Co. v. Whitton,* 13 Wall., 270. It seems to us, after a full and careful examination of this case, that the judgment must be affirmed.

Other objections are made by the learned counsel for plaintiff in error, but they are of minor importance. The record is voluminous, and many exceptions were taken. But this case has been once before to this court, and a judgment in favor of the plaintiff reversed; (*K. P. Rly. Co. v. Pointer,* 9 Kas., 620;) and only such errors as are clearly prejudicial to the substantial rights of the plaintiff in error should be regarded.

The judgment will be affirmed.

All the Justices concurring.

---

MOTION FOR REHEARING.

THE foregoing opinion was filed December 22d, 1874. On the 2d of January, 1875, the *Railway Company* filed a motion for reargument and review. Said motion was heard at the January Term 1875 of this court, and was argued orally by *J. P. Usher* and *T. A. Hurd*, on the part of the Railway Company. No brief on file on part of defendant in error, in opposition to the motion.

*J. P. Usher,* and *T. A. Hurd,* in support of the motion:

It seems to us, that this court has mistaken and misapprehended the facts in this case, as shown by the record. The decision affirming the judgment upon the ground that the "general finding" of the jury gave character to, limited and controlled the *special findings of facts,* has operated a com-

plete surprise upon plaintiff in error, the ruling in this respect being contrary to and a departure from the well-settled rules of law. The record shows that plaintiff in error demanded a special verdict. It was error to receive a general verdict over the objection of the plaintiff in error. The record shows that plaintiff in error moved the court to strike out the general finding, and that the said court overruled the motion; it was error, and this court has overlooked the record in that particular. Twelve distinct objections to the verdict by plaintiff in error are set out in the record. These were made before the jury was discharged, and the court was requested to require the jury to make the proper findings, which request was overruled and exceptions taken. This court evidently overlooked the record in this particular, to the prejudice of plaintiff in error, for the thing was done which this court decides ought to have been done, and holds the plaintiff in error prejudiced because it was not done.

Again, this court erroneously assumed and held that there was a street-crossing where this accident happened. The verdict is contradictory on this subject; the 7th and 21st findings are in conflict. All the evidence tending to prove a right in the public to pass there was objected to, which objections have not been passed upon by this court, but it is taken for granted and decided that Pointer was injured at a public crossing, which is not true.

The decision of this court in this cause upon the question of contributory negligence is so great a departure from the established rules of law, as to deprive corporate and other unpopular suitors of all protection by the courts.

With profound respect for the court, we are compelled to say that we believe a great mistake has been made, and injustice done. Upon the trial of the cause in the court below, and at its very commencement, a special verdict was demanded. This court has often decided that the right to such verdict could not be denied, and in the case of *National Bank v. Peck*, 8 Kansas, 661, the office of a special verdict is remarkably well stated. The verdict in

5—14 KAS.

this case contains a *special* and a *general* verdict, upon which general verdict a stress has been laid; indeed it may be said to be the turning point in the case, and in our opinion, the decision of the court changes the plain meaning of the 13th finding. Now we think all will agree that the clause of general verdict should have been struck out upon the motion of plaintiff in error. Generally and specifically the district court was besought to make this verdict conform to and be a special verdict. On the record all this appears. The court was specially requested to instruct the jury to amend the last finding in their verdict so as to change the same from the form of a "general finding," and to read, "That *if* plaintiff is entitled to judgment upon the foregoing facts, we find for plaintiff, and assess his damages at $5,000." That application the district court overruled, and the defendant excepted. And here we earnestly ask, what authority or right existed in the trial court to receive anything else from the jury than a lawful special verdict? The last finding was not a finding of any fact, and it ought not to have any weight in a special verdict. In the case of *The People v. Williamsburg Turnpike Co.*, 47 N. Y., 586, the jury found several special findings upon which the court directed a general verdict, and the Court of Appeals decided that the findings were defective, and said: "The defects cannot be cured by intendment. *Where the verdict is special the jury cannot be presumed to have found more than is specified in their verdict.*" And see 6 Abbott's Prac. Rep., N.S., 263; Hobart, 53. It is one of the maxims of the law, old as the law itself, which we hope is not yet obliterated in Kansas, that "where the court cannot take judicial notice of the fact, it is the same as if the fact had not existed." Under this maxim, in Broom's Legal Maxims, marginal page 164, the author says: "So on writ of error for error in law, the court will not look out of the record; and on a special verdict, they will neither assume a fact not stated therein, *nor draw inferences of facts necessary for the determination of the case from other statements contained therein.*" The decision in this

Pointer case is directly in conflict with this maxim. It is as certainly so as it is possible for the human mind to comprehend. Certainly, this court does not mean to put itself in conflict with all authority. In a former case in this court, that of *McGonigle v. Gordon*, 11 Kas., 167, a general finding was wholly ignored by this court; and we could have hardly expected a resort to an irregular general verdict in this case to sustain a judgment upon an intendment imagined to be found in such general verdict, which was erroneously allowed to have a place in the special verdict. The quotation from 47th N. Y. shows that in the judgment of the Court of Appeals that could not be done.

We insist that if such general verdict is to make any figure in this case now, we were entitled to a new trial, because it was allowed to be returned in the special verdict. We exclaim, What kind of justice is it that allows a jury to return a general verdict against the law, and our sturdy opposition from first to last, and that same verdict invoked to sustain a judgment! We cannot believe the court fully comprehended, and we fain believe it must have overlooked that we strove to purge from the verdict this improper finding. We cannot avoid asking, Was this general finding justified by the law? Did the defendant company object and protest against it? Were its objections disregarded? Did the trial court err in doing so? And would this court, upon the verdict, if shorn of that illegal general verdict, have pronounced the judgment it has? In all sincerity and fairness, must not all these inquiries be answered in favor of the railroad company? We have shown that the general verdict could not be resorted to to abate from the force and meaning of the other parts of the verdict, but we ought not to be put to that argument, because in all fairness and justice that clause of general finding should have been struck from the record, and if the plaintiff Pointer claimed that the company was guilty of great negligence, and he of but slight, it was his duty to ascertain from the jury whether they so intended to find, and that in direct words, leaving nothing to inference. There is no am-

biguity whatever, in the 13th finding. The jury found that the plaintiff was guilty of negligence contributing to the inquiry. A finding of unqualified "negligence;" there is no occasion to resort to other parts of the verdict to learn what these words mean; and it does seem remarkable to us, that we should be admonished that if we did not understand this to be a finding of slight negligence on the part of Pointer, we should have made further inquiry of the jury what they meant. The only difference in the two findings, 12th and 13th, one for the plaintiff and the other for the defendant, is in the use of the word "gross" launched against the company. This word is said by Redfield to be a vituperative epithet; (2 Redfield on Railways, 201, 202;) and if we go to the very marrow of the case, the accident itself, we have only to borrow the words of the Exchequer Court in Ireland, to show that there was no culpability on the part of the defendant below, even within the present decision of this court. We quote from § 23, p. 202, of Redfield on Rlys.: "The plaintiff cannot recover unless the injury is caused by the negligence of the defendant, nor even then if he has so far contributed to the accident, by want of ordinary care, that but for that the accident would not have happened." It is admitted by everybody that Pointer was negligent in going onto the track, and walking along it. He had no right there. If he had not been on the track he would not have been hurt. If he had used ordinary care in listening or watching for the train, he would not have been hurt; (see *Finlayson's Case*, 1 Dillon, 579.) Why is negligence imputed to the company for moving its train where there was noise, and no imputation upon Pointer for going upon the track at such time? Why is complaint made of the company for not having a watchman upon the rear end of the train, when its bell was rung, a whistle was blown, and men standing close at hand shouted to Pointer to get off the track? Why is the company complained of for operating its train on that day in the manner it did, when the train had been thus operated ever since the road had been built?

We will not conceal from the court the surprise which this decision has occasioned. We are constrained to say that the most appalling consequences may be expected to flow from it. In cases where negligence is the issue, and the defendant an unpopular suitor, this decision cuts to the bone. The trial court under it will be bound to instruct the jury that if they believe from the evidence that the injury to plaintiff was caused by the gross negligence of the defendant, though the plaintiff was guilty of negligence contributing to the injury, the jury are to find for the plaintiff. So everybody must and will understand the decision. We do not believe the court intends to enunciate any such principle of law.

But we think the law respecting special verdicts is, that the jury should find facts only, leaving the court to apply the law: That mixed questions of law and fact cannot be submitted to the jury: That the question of negligence being a mixed question of law and fact, the trial court had no right to submit that question to the jury in this case. If the jury make findings upon questions of law, or upon mixed questions of law and fact, we insist that it is the duty of the trial court to strike them out, and of this court to disregard them. We understand the 12th, 13th, and last findings, to be questions of this character, and should not have been submitted to the jury, and should have been stricken from the verdict. Our first instruction asked was, that the jury be directed to find facts only. The first innovation upon our theory of a special verdict, of which we have knowledge, was upon the trial of this cause, before appealed to this court. On that trial, and on the last, we insisted that the jury should be directed to find facts only. We insist that the 12th, 13th, and last findings have no right to be in this verdict. If the jury can find these mixed questions, then the judge has one duty only to perform, and that, to determine from the facts found, whether the jury found the law properly on these mixed questions.

If the three findings last mentioned be expunged, there can be no question but that the defendant below is entitled to

a judgment upon the findings. The 19th finding alone is decisive of the case, as we believe. There is no question but that Pointer was walking easterly upon the track, and after he went upon it he never looked in either direction, nor took the least precaution for his own safety. He was in a dangerous place, and knew it, and was bound to do something to protect himself from injury. Having failed to do this, ought he to recover? (See a case tried in the United States circuit court, November Term 1873, of *Alcorn v. Pacific Railroad*, before Judge Dillon.)

When this cause was first in this court, we were notified that if Pointer was on a street public either in law or in fact, when the accident occurred, he would not be a trespasser upon the right of the railway company, so as to relieve the company *from reasonable and ordinary care to avoid injuring him.* This court now starts out in its opinion by asserting that the train was started backwards "*over a public crossing.*" We are bound to say there is no warrant for this statement, and we have a right to the judgment of the court whether the evidence, (which necessarily had to be of record in order to establish that this was a public crossing,) did establish such fact. We objected to every particle of it from first to last. The only evidence offered on that point was the city ordinance. It is not pretended that that ordinance gave the public any right to enter upon the premises. After the plaintiff rested his case without any testimony of assessment or payment of damages, the defendant moved to strike the copy of the ordinance from the evidence, and again, by 3d instruction, that the jury should disregard the ordinance. The court erred in all its rulings and decisions respecting the ordinance. It left the jury to give some effect to the ordinance, and made the conflict in the findings, there being no evidence that there was any such street in law. Was there a street in fact? The evidence that was offered by the plaintiff to establish that point, did not prove that the public had ever passed where this man was injured until after it was graded by the Railroad Company. It was in fact impassable, and whoever

passed in that direction before the railroad was built, passed along the river bank at a distance of about 148 feet east of where Pointer was injured. We refer to the testimony of W. O. Gould, and assure the court that if a re-argument is permitted, we can make good our assertion, that there was no street public, either in law or in fact, where the man was injured; that the district court erred in its admission and rejectment of evidence respecting the same, and in its charge to the jury; that the whole case touching the street and alleged public way, was a flagrant assumption which the jury had no right to find, and which the court below, according to every principle of law, was bound to have set aside. The Railroad Company proved by several witnesses, among whom were the yard-masters of the railroad companies in charge and direction of the tracks, that they warned and endeavored to keep the public off from them. There was not one particle of evidence to the contrary. The injury occurred in the vicinity of the depot, where the public necessarily had to come to transact its business with the company, and though this was the fact, yet strangers and intruders who had no business there were ordered off, and we endeavored to have the jury find the fact that it was so, and especially requested the court to have them find that fact, and excepted to this decision, and are not a little astonished to find, in the opinion of this court, that this exception was of minor importance, more especially when the court plants the case upon the grounds that Pointer was at a public crossing. We endeavored to have the jury find the exact place where the injury occurred. The testimony showed that it was sixty-five feet south of Chestnut street, and at no supposed street crossing at all. Almost all our questions propounded upon the coming-in of the jury had reference to this supposed street in one way or another. We cannot be charged with having omitted anything in respect to the alleged street, by which it should be conceded that there was a street public there, either in law or in fact. It is not to be denied that half the battle, by the former decision of this court, depended

upon the question whether Pointer was in point of fact a trespasser at the time and *place* where he was injured. The court in its opinion now in question has taken it for granted that he was not. It supposes that the injury occurred upon grounds that would be covered by Chestnut street, if the same was protracted to the river, and upon its crossing of Water street, which the decision supposes to have there been lawfully laid out. In short, that he was injured upon a *street crossing*, where the parties had equal rights to be. The action of the court, in taking it for granted that the accident occurred at a public street crossing, is most disastrous to plaintiff in error, and in all-becoming deference we do pray the court to grant our prayer to be heard upon this question.

The opinion of the court was delivered by

BREWER, J.: On a motion like this I am not ordinarily inclined to write an opinion. Nor do I now intend to go over the ground traversed in the opinion already written. I merely seek to guard against certain conclusions which counsel erroneously draw from that opinion. And first: The court has not receded from the proposition laid down in the case of *The L. L. & G. Rld. Co. v. Rice,* 10 Kas., 426, that a party is entitled to a special verdict, (though upon the law as it now stands, *quœre:* see laws 1874, ch. 91, page 140.) Nor has it questioned the doctrine that special matter lawfully found prevails over a general verdict. Counsel contend that the last finding, which is in the form of a general verdict, was unlawfully returned by the jury, and received by the court; that it ought to have been stricken out, or amended, on the motion which was made; and that with that out, the conclusion of this court would have been different. I am inclined to think (and as Judge VALENTINE contemplates writing out his views, I am here expressing my own opinion without consultation with the other Justices,) that the motion should have been sustained, though the statement prepared by counsel, and submitted to the jury, as the form of a special verdict, is very different from that contemplated by the statute,

(*First National Bank v. Peck*, 8 Kas., 660,) and more resembles a finding upon particular questions of fact, which is proper only in conjunction with a general verdict. But even if the finding had been stricken out, or amended, as suggested, its influence would have been the same upon the mind of the court. It was used by us simply as throwing light on the intention of the jury in the 13th finding, and in no degree for the purpose of overriding that intention. The intention of a jury is to be sought in a special verdict, as the intention of a party executing any other instrument. What do they mean by this collection of words, which they have returned as a special verdict? is always the first question. And anything which throws light upon that meaning is proper matter of consideration. Thus and thus only was this last finding used. It was an expression from the jury. Whether ruled out or in by the court, it was still the same expression from the jury. If without any such finding the record disclosed the fact that the foreman of the jury, in the presence and with the apparent assent of his fellows, and upon the return of the verdict, had stated to the court, "we mean by the 13th finding slight negligence," could it be doubted that such circumstance would and ought to have great weight with us in determining the intention of the jury? It was not the province of this court to first examine the evidence as it appeared in the record, and form our conclusions as to the negligence of the plaintiff, and then seek to reconcile the finding with those conclusions. That would be making us the triers of the question, rather than the jury. I have no hesitation in saying that if I had conceived that to have been the proper method of examination, I for one, should have come to a different conclusion upon the whole case. Rather was it our duty, as I conceive, to ascertain in the first place what the jury intended, and then whether that could be upheld by the testimony. Following this line of inquiry, we sought first to ascertain what the jury intended by the 13th finding. Two findings stand side by side, in one of which the jury characterize the conduct of the railroad company as negligent, describe the degree of negli-

gence, (for, under the rulings in this state the adjective "gross" is not a mere vituperative epithet, but a term of classification,) and assert that it was the immediate cause of the injury, in the other of which they characterize the conduct of the plaintiff as negligent, but do not indicate the degree, nor whether it proximately or remotely contributed to the injury. This difference between the two findings naturally indicated that the jury did not consider the conduct of the parties as equally negligent, or as equally contributing to the injury. The court before whom the case was tried construed this finding against the company, and after a patient examination of the whole record we came to the same conclusion. We suggested in the opinion filed some and only some of the more prominent considerations which influenced our judgment. We might have noticed many others. We did not attempt to conceal the embarrassments and doubts we had. And counsel may be assured that questions of such doubt do not pass from us until after a most thorough and patient examination of the record.

The other question, as to whether the verdict, as we construed it, could be upheld, was of no less difficulty. We did not in the opinion, and do not now, indorse the doctrine of "comparative negligence," nor does it seem to us correct that a party guilty of ordinary negligence can recover simply because the other party was guilty of greater negligence. The rule as we understand it, was laid down in *Sawyer v. Sauer,* 10 Kas., 466. In reference to the cases in which it is proper to submit to a jury the question of negligence, I can do no better than quote from the language of Mr. Justice Hunt, in *Railroad Co. v. Stout,* 17 Wall., 663. After stating cases on either side in which it is proper to declare as a matter of law that it is or is not negligence, he says: "But these are extreme cases. The range between them is almost infinite in variety and extent. It is in relation to the intermediate cases that the opposite rule prevails. Upon the facts proven in such cases, it is a matter of judgment and discretion, of sound inference, what is the deduction from the undisputed facts.

Certain facts we may suppose to be clearly established, from which one sensible, impartial man would infer that proper care had not been used, and that negligence existed; another man equally sensible and equally impartial would infer that proper care had been used, and that there was no negligence. It is this class of cases, and those akin to it, that the law commits to the decision of a jury. Twelve men of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer — these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion. This average judgment, thus given, it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than does one man — that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge." This it seems to me states the true rule, in language most apt and clear. I think the motion for a rehearing should be overruled.

VALENTINE, J., concurs.

KINGMAN, C. J., dissents.