HANNAH M. ROACH, *as Administratrix of the Estate of Mitchell Roach, deceased,* v. THE ST. JOSEPH & IOWA RAILROAD COMPANY.

1. RAILROAD CROSSING—*Negligence—Question for Jury.* Whether it is negligence for the engineer not to give signals of danger by whistling or ringing a bell in the neighborhood of a dangerous private railroad crossing, or not, is a question which may properly be submitted to the jury.

2. CONTRIBUTORY NEGLIGENCE—*No Recovery.* A person who drives a team onto a railroad crossing at a time when a regular passenger-train is about due, and neglects to look for an approaching train which he might have seen in time to have avoided injury to himself if he had looked, is guilty of contributory negligence barring a recovery for an injury received from such train.

*Error from Brown District Court.*

ACTION brought by *Hannah M. Roach,* as the administratrix of the estate of Mitchell Roach, deceased, to recover damages arising in consequence of his death, caused by the alleged negligence of the defendant *Railroad Company.* The court sustained the defendant's demurrer to the plaintiff's evidence. A motion for a new trial was overruled, and judgment given against the plaintiff for costs. She brings the case to this court. The material facts are stated in the opinion, filed October 5, 1895.

*Grant W. Harrington,* and *F. M. Webb,* for plaintiff in error.

*M. A. Low,* and *W. F. Evans,* for defendant in error.

The opinion of the court was delivered by

ALLEN, J. : Mitchell Roach, the husband of the plaintiff in error, was killed on the line of railroad then operated by the defendant in error, at a private

crossing on his farm in Brown county, on the 11th of January, 1888. The crossing where the accident occurred was on a private road extending from the highway to the plaintiff's residence, situated on the west side of the railroad-track. The railroad-track enters a cut within a very few feet north from the crossing, and curves to the northwest through the cut, a distance of about 900 feet. A short distance south of the cut the railroad passes over a trestle. From the highway the private road ascends all the way to the railroad-track, and a person coming in from that way cannot see the railroad-track, or a train on it, until it emerges from the cut, at any point further from the track than about 30 feet from the east rail. At this point, it is clearly shown by the testimony of all the witnesses who testified with reference to it, a view of the track for the whole length of the cut can be had, and a person in a wagon can see the track, and anything that may be upon it through the whole length of the cut. A person on the public highway near the entrance to Roach's place cannot see a train of cars while in the cut. The accident occurred in the afternoon, and was witnessed by the plaintiff and H. G. Reed, a neighbor, who lived across the public road from Roach's place. The testimony shows that the deceased, Mitchell Roach, drove into the private road from the highway with a team of mules, and a lumber-wagon in which he was standing; that the mules walked at a pretty brisk rate, without stopping, until their forefeet were upon or near the east rail of the railroad-track, when Roach pulled back and endeavored to stop them, and then attempted to jump from his wagon. The mules sprang forward, and the engine of a train coming out of the cut from the north struck the front wheels of the wagon, threw him out, and

killed him. It is charged that the defendant was negligent in failing to give any signal, either by whistling or ringing a bell, before reaching the crossing. On the part of the railroad company it is contended that there was no obligation to whistle or ring when approaching this private crossing.

It clearly appears from the evidence that this was a very dangerous crossing, and we think it was a question proper to be left to the jury whether, in the exercise of reasonable care, signals should have been given to warn persons at the crossing of an approaching train. (*Railroad Co. v. Hague,* 54 Kas. 284.) The evidence shows that no signal was given until it was too late to be of any service. The court sustained a demurrer to the plaintiff's evidence.

1. Railroad crossing— negligence— question for jury.

On the question of the negligence of the defendant there was some evidence to go to the jury, but we have to inquire further whether contributory negligence on the part of the deceased is shown. It appears that the railroad had been in operation for several years prior to the accident, and that the deceased had lived there ever since its construction. The train which caused his death was a regular passenger-train, on time, and running on a time-schedule that had been in force for several months. The deceased was certainly as familiar with the surroundings of the crossing and with its dangers as were the employees of the company. As this private way was the usual approach from the public road to his house and often used by him, he is certainly chargeable with knowledge of its dangers.

The evidence of H. G. Reed shows that he saw Mr. Roach come along the public road from the north, standing up in a lumber-wagon, driving a span of

mules; that he watched him all the way till he got
to the railroad crossing; that just about the time the
mules were stepping over the east rail he saw him
pull back on his lines, and just about the same in-
stant the engine struck the wagon, and he was killed;
that he was driving on a walk at a pretty good gait
all the time; that he could not see that the mules
were frightened.

Mrs. Roach, the plaintiff, testified that when she
was at the well, north from their house, she looked un-
der the trestle and saw her husband enter the place
off the public road.    She then started toward the
house, and when she got a little over half-way up the
hill, she heard the train, and about the same instant
saw it come out of the cut; that at just about the
same time she saw her husband in the act of coming
on the track; that the mules had just got their front
feet across the rail; that she then hallooed and
clapped her hands; that her husband made an effort
to pull the mules off the track, and then he attempted
to jump out toward the back end of the wagon; the
mules bounded across the track, and the engine struck
the front wheel of the wagon.    The place where Mrs.
Roach was standing was considerably lower than the
crossing, so that she could only see her husband's
head and shoulders just as he came up near the track.
She also testified that he had a cap on, with ear-flaps
dropped down loosely over his ears; that when she
first saw him he appeared to be looking toward the
northwest, which would be in the direction from
which the train was approaching, and that the train
was running very fast.

The engineer in charge of the train testified that the
train was running at about the usual rate of speed,
not to exceed 25 miles an hour; that his attention was

42—55 KAS.

first called to the team by his fireman, who had been busy putting in coal, and as he looked out he exclaimed, "My God, there's a team coming on the track!" that just at that time he saw the heads of the animals; that he applied the air-brakes, whistled, and reversed the engine as quick as he could.

All the evidence in the case shows, without controversy, that when 30 feet away from the track the deceased could have seen the approaching train if he had looked. The evidence of the witness, Reed, is to the effect that Roach appeared to be looking straight ahead toward the crossing; but as Reed was some distance behind him, this statement is not entitled to much weight. At this point, the deceased either did or did not look. If he did look, he must have perceived his danger, and it was his duty to have stopped at once. It was his duty to look, but the evidence indicates very strongly that he did not look when he first came in sight of the approaching train. All the circumstances indicate that he did not perceive his danger until the mules' feet were close to the east rails. Reed testified that the mules continued to walk until that time, and both he and Mrs. Roach testified that he then pulled back on the lines in an effort to back them off. It is true that the distance between the point where he could have first obtained a view of the approaching train and the track is short; but, knowing the danger of his surroundings, it was clearly his duty to have looked at the first opportunity, and if he saw danger approaching to have stopped or endeavored to stop at once. This he did not do. The dangers of the situation, with which he certainly must have been familiar, called for a degree of caution commensurate therewith. In *Railway Co. v. Adams,* 33 Kas. 427, it was held:

"It is the duty of a person about to cross a railroad

track to make a vigilant use of his senses, as far as there is an opportunity, in order to ascertain whether there is a present danger in crossing. A failure to listen or look, when by taking this precaution the injury might have been avoided, is negligence that will bar a recovery, notwithstanding the negligence of the railroad company in failing to give signals contributed to the injury."

The same rule is declared in *Clark v. Railroad Co.*, 35 Kas. 350 ; *Railroad Co. v. Davis*, 37 id. 743 ; *Railroad Co. v. Townsend*, 39 id. 115 ; *Railroad Co. v. Priest*, 50 id. 16. Of the soundness of the rule followed in these cases there can be no question. Clearly, one who fails to exercise reasonable care for his own safety, and thereby receives an injury which he might have avoided, ought not to subject another to an action for damages because of his negligence of a like kind contributing to the injury. The judgment is affirmed.

2. Contributory negligence— no recovery.

JOHNSTON, J., concurring.

MARTIN, C. J. : I am constrained to differ with my brethren in this case. The deceased and those in the management of the train had an equal right to the use of the crossing, and it was their duty to be on the lookout. It is quite evident that they did not see each other in time to avoid the fatal collision. The train was in a curved cut, and running fast. When the deceased with his team might have been first seen from the pilot, the view of the engineer was probably cut off by the boiler. The fireman had a better opportunity of seeing the danger, but it was his duty to keep the engine hot, and he could not be looking ahead every moment for obstructions. Perhaps both the engineer and the fireman exercised ordinary care as to keeping a proper lookout. In any event the criticism

of the majority of the court upon their conduct is placed on another ground, namely, their failure to give signals while running through the cut. Now the court cannot say that the deceased had no other duty than to look out for this train. It was his duty to watch for trains in both directions, as well as to look ahead in the road over which he was driving. He was going up hill, and had his team to manage and keep in the road. Had he been looking for this train and thinking of nothing else he could not have seen it more than 20 seconds before the collision. Was his failure to see it sooner than he did conclusive evidence of a want of ordinary care on his part? I think not. In my opinion the case comes within the rule early asserted and often followed by this court that when the circumstances are such that different men might arrive at different conclusions as to the degree of care exercised, it is then a question for the jury to decide. (*K. P. Rly. Co. v. Pointer*, 14 Kas. 37; *K. C. Rly. Co. v. Fitzsimmons*, 22 id. 686; *Osage City v. Brown*, 27 id. 74.)