UNION PACIFIC RAILWAY COMPANY v. WILLIAM H. YOUNG.

1. NEGLIGENCE OF RAILWAY CORPORATION; *Personal Injuries of Servant.* In an action to recover damages for personal injuries by a brakeman in the employ of a railway company while in the discharge of his duties, where the testimony introduced on the trial under the pleadings tends to prove, that the plaintiff was injured through the negligence of the engineer of the company in charge of the locomotive of the train; that said engineer was an incompetent and unfit person to be a locomotive engineer; that the company was guilty of negligence in employing said engineer, and in retaining him in its employ after his unfitness had become known, or when by the exercise of ordinary care it would have been known; and thereon the jury find a verdict for the plaintiff against the railway company, and the trial court approves the same, and sufficient evidence is offered to sustain the verdict, *held*, that this court will not disturb the judgment on the claim of the railway company that the preponderance of the evidence proves the injury to the plaintiff was due solely to his own fault, or misfortune, growing out of his own errors of judgment.

2. DAMAGES; *Excessive; When Verdict will not be set Aside.* In an action which has been pending in the courts for nearly nine years before the verdict, where the plaintiff seeks to recover for personal injuries result-

ing in the loss of a right hand at the wrist, and such plaintiff at the time of the injury was only twenty-five years of age, and engaged in an employment which has a regular system of promotions, and two juries have returned substantially the same amount of damages, and the verdict has been approved by the trial court, *held,* that a verdict of ten thousand dollars, under all the circumstances of the case, is not so flagrant as to compel a reviewing court to disturb the same solely on the ground of its being excessive.

### *Error from Leavenworth District Court.*

AT the March Term 1876 of the district court, *Young* recovered judgment against the *Railroad Company* for $10,000, for the loss of his right hand, which was injured and crushed while he was trying to couple cars on defendant's railroad, at Lawrence, in September 1867. *Young* was a brakeman, in the employ of defendant company, and he alleges that the accident happened through the negligence of one Frank Crane, an engineer, who was wholly incompetent and unfit, and that the *Railroad Company* had knowledge of such incompetency and unfitness. The *Railroad Company* brings the case here on error.

*J. P. Usher,* and *C. E. Bretherton,* for plaintiff in error. An elaborate printed brief was filed by each counsel, and the case was also argued orally by Mr. *Usher.* The Railroad Company contended, that the main questions of law involved in the case are, that the burden of proof is upon the plaintiff to establish, 1st, that plaintiff was injured through the negligence of Crane, the engineer; 2d, that the plaintiff did not by his negligence contribute to his own injury; 3d, that Crane was an incompetent and unfit person to be a locomotive engineer; and 4th, that the company was guilty of culpable negligence either in employing him or retaining him in its employ. Upon the general question of negligence, counsel cited 59 N. Y. 366; 20 Mich. 128. The definition of negligence given by this court in the *Rollins case,* 5 Kas. 169, literally followed by trial courts as it was in this, has resulted in very great wrong. An instruction from the court,

32—19 KAS.

"but when the plaintiff's negligence is only slight, and that of the defendant is gross, such negligence on the part of the plaintiff will not prevent his recovery," conveys to the minds of the jury no definite idea of the true rule of law upon the subject, and leaves them to find a capricious verdict. Now this rule of law is not the rule of the federal courts, nor of the courts of any state except Illinois and Georgia, according to Justice Cole, in *O'Keefe's case*, 32 Iowa, 467. To those states, of course, must be added Kansas. Many, and among them the writer, regard it a great misfortune that this rule was adopted in this state; but since it has been, the rule of decisions in Illinois, from which it was borrowed, ought in common justice to be adopted here. The courts in that state habitually look into the evidence and determine from it whether the negligence of the plaintiff was such when compared with that of the defendant as to show that the injured party was not negligent and blamable, and if so, they hold he cannot recover. (65 Ill. 178; 52 Ill. 330; 75 Ill. 106.) The characterization of negligence by the term "gross," adds nothing; and the jury in this case no better understood what rule of law was intended to be given than if it had been given as above stated. The fact is, the rule is radically wrong. The courts in Illinois have found constant difficulty in its application. Repeatedly they find it necessary to carefully explore the testimony and weigh the evidence to determine whether the verdict is within their most inconvenient rule of law. (C. L. J., vol. 2, p. 84.) Again: The damages assessed by the jury are excessive. When the case was first here, (8 Kas. 658,) this court, upon full consideration, decided that $9,000 was excessive damages for the loss of a hand. There was no proof magnifying the injury or changing the condition of the case in any respect from what it was before, and yet the verdict now is for $10,000, and must have resulted from prejudice and passion, if not from malice.

*Thomas P. Fenlon*, and *Clough & Wheat*, for defendant in error, as to the liability of the Railroad Company for em-

ploying Crane without sufficient care, and retaining him in its employ after knowledge, and after being informed of his incompetency and unfitness, cited 10 Kas. 471; 14 Kas. 38; 18 Kas. 59, 62. As to the measure of damages, it was a question for the jury, with which this court has not under the evidence and rules of decision in relation to such matters anything to say. This is the second verdict; and we think it will not be of any use to attempt to convince twelve jurors that ten thousand dollars is too much, especially when that sum is considered in connection with the many years which have elapsed since the injury was inflicted. 17 Kas. 168 to 173.

The opinion of the court was delivered by

HORTON, C. J.: This action has been pending in the courts for nearly ten years, and the injury for which the damages were assessed occurred on the 19th of September 1867. The case was before this court at the July Term 1871, and is reported in 8 Kas. 658. On its return to the court below the parties filed new pleadings. The cause was tried the second time on 6th March 1876, and resulted in a verdict and judgment for the defendant in error for $10,000. The railway company again invokes the aid of this court to reverse the judgment against it.

Young was in the employment of the railway company, and by reason of such employment it became his duty to couple the cars upon the trains on which he was employed; and at the Lawrence station, while attempting to couple the cars by setting an iron pin in the drawhead of one of the cars, his right hand dropped between the bumpers of the two cars he was trying to couple, and was crushed so that amputation at the wrist became necessary. The petition alleged that the injuries resulted wholly and entirely from the negligence, carelessness, and recklessness of the railway company and its engineer then having charge and control of the engine attached to the train; that said engineer, in backing his engine and the cars attached for the purpose of having the same

connected to other cars on the track, and where Young was standing to fasten the cars together, so violently, recklessly and negligently ran the engine and cars to, against and upon the cars where Young was, that he received the injury complained of; that the railway company was at said date informed and fully aware that the said engineer had been for a long time theretofore and was then totally incompetent to perform the duties of an engineer; that he was careless, negligent, and reckless; that the engineer was employed without reasonable inquiry either as to his fitness or competency to be or to act as such engineer, or to have control or power as such, and without reasonable diligence having been exercised to ascertain the fitness of said engineer to act in that capacity, and without reasonable grounds to believe he was competent for such service, and that the company continued him in its employment until after the happening of said wrongs and grievances without using reasonable diligence or care to know or ascertain or be informed of the fitness, care, knowledge, or skill of said engineer, or the want thereof on his part. Upon the trial the plaintiff in the court below offered evidence tending to prove that he was injured through the negligence of the engineer; that he did not by his negligence contribute to his own injury; that the engineer was an incompetent and unfit person to be a locomotive engineer, and that the company was guilty of negligence in employing him and retaining him in its employ.

That the evidence fully established the unfitness and incompetency of the engineer for the business intrusted to him, and that the company knew and ought to have known of such unfitness and incompetency, we do not think can be fairly questioned. The critical points in the case of the defendant in error were, in our view, whether the injury received was caused by the negligence of the engineer, and whether Young was guilty of contributory negligence. These questions however were properly submitted to the jury for their determination, upon instructions fully warranted by the previous decisions of this court, and from the verdict must have been

decided adversely to the railway company; and as there was evidence introduced to sustain the same, we cannot interfere, although the preponderance might be opposed to the verdict. Notwithstanding the exhaustive and elaborate briefs presented by the counsel of the plaintiff in error to this court, no new questions are raised concerning the allegations of the petition, the objections to the testimony, or the instructions of the court; hence we do not feel justified in incorporating in this opinion the voluminous testimony given on the trial, or in reviewing law-points deemed settled by the adjudications of this court. We refer to the following cases as decisive of the material questions to which our attention has been called by the arguments of counsel upon the testimony and instructions: *Rollins v. U. P. Rly. Co.*, 5 Kas. 167; *K. P. Rly. Co. v. Milliken*, 8 Kas. 647; *Sawyer v. Sauer*, 10 Kas. 466; *K. P. Rly. Co. v. Pointer*, 14 Kas. 37; *K. P. Rly. Co. v. Salmon*, 14 Kas. 512; *K. P. Rly. Co. v. Kunkel*, 17 Kas. 145; *C. & R. I. Rld. Co. v. Doyle*, 18 Kas. 58.

The most serious matter in the case for our consideration is the objection urged against the verdict on the ground that it is excessive. In determining this objection, in addition to the many other elements that enter into the estimate of the real amount of damages sustained by the defendant in error, we are to consider the fact that he was only twenty-four or five years of age at the time of the amputation of his hand, that he was engaged in an employment in which there is a regular system of promotions, that many years ·elapsed between the injury and the verdict, and that two juries have decided substantially in favor of the sum of $10,000. Again, the trial court, whose imperative duty it was to set aside the verdict, or reduce its amount, if the jury erred from prejudice or other cause, has approved the same, and added its sanction to the award. The question was one peculiarly proper for the jury to determine; and although the verdict is large, larger perhaps than any member of this court would, as a juror, have returned, we cannot, in view of all the cir-

cumstances, say that such damages are so excessive as to strike the mind at first blush as being the result of bias or prejudice. To interfere, we must say that the jury acted under some improper influence or bias in the matter. This we cannot say. If the defendant in error had obtained $6,000 for his injury soon after the same occurred, this sum kept at seven per cent. interest per annum would have now exceeded the verdict. The first verdict was for $9,000. This sum at seven per cent. interest during the time between the verdicts would have exceeded largely the second verdict; hence in fact the second verdict, comparing the time it was rendered, is really much less than the first one. The amount which the defendant in error earned per year at the time of the injury is not alone to be considered in the award to him of such compensation as shall net him in his present maimed condition a like income in the future, because the opportunities of promotion and the occupancy of a more lucrative position are also to be regarded. The yearly interest of the judgment at the rate of seven per cent. (and this is all that money will usually realize, even in our state with its high rates of interest, after deducting taxes,) will amount to $700; and when there is taken into account the advancement of firemen, brakemen and station-keepers on railways from one position to another, till they oftentimes become conductors, superintendents, and managers of railways, with salaries ranging from $1,200 to $10,000 and upwards per annum, it is neither unreasonable nor imaginative to suppose that an attentive, intelligent, and energetic brakeman of twenty-five would in time earn a much larger sum per annum than $700 in a higher position if the possibilities of the future had not been forever closed to him by the loss of his right hand. The trial judge had some opportunity to determine from the defendant in error while on the witness stand as to his capacity for business, and his general intelligence, which is denied to us; and considering all the facts in the case, we do not feel the liberty of saying that the verdict of the jury is

so flagrant, or outrageously unjust, as to require of us, as a reviewing court, to set it aside and grant a new trial solely for excessive damages.

VALENTINE, J.: I concur in the foregoing opinion of the Chief Justice. While I think that the verdict of the jury awards excessive damages, yet I do not think that the excess is so great that it alone, without any other error or irregularity in the proceedings of the court below, would authorize a reversal by this court of the decision and judgment of the court below.

But all that I wish to say is merely a few words with respect to negligence. Twice the very learned and senior counsel for the plaintiff in error has charged this court with adopting what he calls the rule or doctrine of "comparative negligence." The first time he so charged was in his oral argument on a motion for a re-hearing in the case of the *K. P. Rly. Co. v. Pointer.* (That case will be found reported in 14 Kas., 37 to 67.) The second time he so charged was in his oral argument in this case. Mr. Justice Brewer denied the charge on the first occasion; (14 Kas. 66;) and I shall deny it now. I do not think that there is anything in all the Kansas Reports furnishing the slightest foundation for such a charge. I do not think that any judge of this court has ever entertained the slightest inclination to adopt any such doctrine, and certainly no judge of this court has within the last nine years believed in any such doctrine. The counsel's supposed doctrine of "comparative negligence," as I understand him, is this: Where two parties are guilty of negligence contributing to the injury of one of them, the injured party may recover damages therefor from the other, provided his negligence is less than that of the other. Now it is generally true, that the party recovering damages for injuries resulting from negligence must himself have been guilty of less negligence than the other party. But this is not always true. A passenger on a railroad, who has exercised ordinary care, that is, that degree of care which an

ordinarily prudent man would ordinarily exercise under like circumstances, might recover from the railroad company for injuries resulting from negligence, although both parties were guilty of negligence, and his slightly the greatest; for in such a case the railroad company is bound to exercise great or extraordinary care, and is liable for very slight negligence; while the passenger is bound to exercise only ordinary care, and his action can be defeated only by a showing that he was guilty of ordinary negligence. Slight negligence on his part in such a case would not defeat his right to recover. And generally, the mere fact that the plaintiff has been guilty of less negligence than the defendant will not authorize a recovery on his part. Take the present case for instance, and suppose that the railroad company was guilty of slight negligence only: the plaintiff would not then have any right to recover, even if he were not guilty of any negligence at all; for in this class of cases a railroad company is liable only for ordinary negligence, and not for slight negligence. Or suppose that the plaintiff himself was guilty of ordinary negligence contributing to the injury: then he could not recover even if the negligence of the railroad company was greater than his; for in this class of cases, and indeed in almost every class of cases, and indeed in almost every case, the plaintiff must have exercised ordinary care, and not have been guilty of ordinary negligence, or he cannot recover. There are we suppose a few exceptions where a person who has himself not exercised ordinary care may nevertheless recover, but these exceptions are very few. In the present case it was the duty of both the plaintiff and the defendant to exercise ordinary care, and be free from ordinary negligence; and neither was bound to exercise great or extraordinary care; and neither would have lost anything by being guilty of merely slight negligence. Slight negligence is merely the failure to exercise great or extraordinary care; and such negligence would not in a case of this kind make the defendant liable, or prevent the plaintiff from recovering. All negligence consists merely in the failure to exercise care

and diligence; and there are infinite shades or degrees of negligence, as well as of care and diligence. Sir William Jones says: "There are infinite shades of *default*, or *neglect*, from the slightest inattention or momentary absence of mind to the most reprehensible supineness and stupidity." The courts however cannot recognize all of these infinite shades or degrees of negligence, but only a few of them. And the division lines between even these few cannot be very definitely located. This court has recognized three and possibly more degrees: slight, ordinary and gross, and possibly, very slight, and gross amounting to wantonness. Some courts, in theory, refuse to recognize any degrees of negligence, although in practice they all unquestionably recognize degrees. It would be extremely absurd not to do so. But the word "negligence" does not always mean the same thing, under all circumstances, in all cases, and to all persons. In its most extensive sense it means every neglect and default, and every conceivable omission of care and diligence. In this sense, the failure to exercise the most extraordinary care, the "utmost" care, is negligence as well as the grossest and most reprehensible omission of duty. But ordinarily we use the word in a more limited sense. Ordinarily when we use the word "negligence" without any qualifying word or words, we mean ordinary negligence. This is most universally so when we use the word with respect to plaintiffs; for it is almost universally the case that ordinary negligence on the part of a plaintiff will defeat his recovery. Probably also, in a majority of cases, when we use the word with respect to defendants we mean ordinary negligence; for probably in a majority of cases ordinary negligence would render the defendant liable. But ordinarily, when we speak of negligence with respect to defendants, we mean culpable negligence; and culpable negligence may in one case be slight negligence, in another case ordinary, and in another case gross. Thus in an action by a passenger against a railroad company, the word "negligence," as applied to the railroad company, would mean merely slight negligence; for in such a case the

slightest negligence on the part of the company would make the company responsible and would be considered as culpable negligence. In an action by an employé of a railroad company against the company, as in the present case, if we should speak of the negligence of the company we would mean ordinary negligence, for in such a case that would be the kind or degree of negligence which would render the company liable. And in an action against a railroad company by a person who was at the time of the injury a wrongdoer, and a trespasser upon the rights of the company, if we should speak of the negligence of the company we would mean gross negligence, or gross negligence amounting to wantonness, for in such a case no mere ordinary negligence would render the company liable. All courts, I think, in practice recognize degrees or distinctions in negligence such as the foregoing; but generally those courts which do not recognize degrees of negligence in theory, say that all negligence less than culpable negligence, or less than that degree which would in any particular case render the defendant liable, or prevent the plaintiff from recovering, is not negligence at all, and all negligence greater than that degree which would in any particular case render the defendant liable, or prevent the plaintiff from recovering, is merely negligence with a vituperative epithet. A great majority of the courts however in this country recognize degrees of negligence both in theory and in practice. And it is not strange that they should do so; for no court, however great it may be, can abolish the world as it actually exists, or abrogate human transactions as they actually occur; but all courts must take things as they find them. Degrees of negligence exist in the very nature of things, and it is foolish to attempt to wholly ignore them. To say that slight negligence can have no existence in fact, and then to say that a carrier of passengers may be held liable for slight negligence, is not altogether logical. It is virtually to say that a carrier of passengers might be held liable for something which could not have any existence. The fact is, that slight negligence may have an existence; and in some

cases it is material and substantial negligence, and in other cases it is not. The three degrees of negligence usually recognized are designated by the words "slight," "ordinary," and "gross;" and these are pretty clearly defined in Shearman & Redfield's work on Negligence, (see § 18.) There are also other degrees or kinds of negligence sometimes recognized, which are designated or defined by other words or phrases. But with all the various modes and ways of designating the various kinds and degrees of negligence, probably no one ever supposed that "slight negligence" meant "ordinary negligence," or anything else but "slight negligence." Probably no jury ever supposed that any court meant ordinary negligence, or anything else but slight negligence, when the court used the words "slight negligence." There is nothing in the present case to show that the jury misunderstood the language of the court below with regard to negligence; and I do not think that the jury could have been misled by any such language. Indeed, I do not think that the plaintiff in error has anything to complain of except the amount of the verdict; and I do not think that even that, considered by itself, as it must be at this time, is so extravagant or exorbitant as to justify this court in overturning both the verdict of the jury and the decision and judgment of the court below. In this our brother Brewer differs with the Chief Justice and myself, and I believe this is the only difference of opinion in this case. Upon this question I believe now just as I did when the case was formerly before us. (8 Kas. 658.) But at that time there was a fatal error which required a reversal, and I do not think that there is any such error in the case now.

The judgment will be affirmed.

Brewer, J.: I am unable to concur with my brethren in affirming the judgment in this case. To my mind the amount given by the jury is so largely in excess of any fair compensation for the injury as to call imperatively upon this court to interfere and set the verdict aside. I expressed my

views in this respect fully in the opinion written when the case was here before, and when the verdict was one thousand dollars less than the present, and it is unnecessary to repeat them. The facts that great length of time has since elapsed, and that another jury has come to the same conclusion, are in my judgment no sufficient reasons for change. There is nothing in the record to show that the company is responsible for the delay. For aught that appears, the very magnitude of the plaintiff's claim has been the only thing standing in the way of settlement, and if he had at the first demanded only a fair compensation for his injury it would have been paid without delay and without suit. Is it right to punish the company for not submitting to and paying an exorbitant claim, by mulcting it in a larger sum, until it is shown that the company refused to pay what was fair and right? Lapse of time furnishes no just ground for sustaining a verdict which otherwise would be an outrage. And while the opinion of a second jury is entitled to respect, and carries with it some weight, sufficient no doubt to support an award a few hundred dollars in excess of what would seem a fair compensation, yet when the amount is double or treble the sum which ought to be expected from even a large sympathy for the sufferer, and a large dislike to the corporation, a second verdict only makes plainer the necessity for judicial interference. If ten thousand dollars damages for the loss of the hand of a common laborer can be sustained, what limit can be placed when the injuries are such as sometimes occur in railroad accidents? I think the judgment should be reversed.

*By the Court:* Judgment affirmed.

[NOTE.—A petition for a rehearing of this case was filed on the part of the railroad company, on the 22d of January 1878, and was argued by *J. P. Usher* in support of the motion, and *Thomas P. Fenlon* in opposition. The motion was denied.]