THE CENTRAL BRANCH UNION PACIFIC RLD. CO. v. DAVID HENIGH, *as Adm'r of the Estate of Charles W. Henigh, deceased.*

NEGLIGENCE; *Facts Showing No Cause of Action for Damages.* Where a railroad company constructs a certain switch-track, 667 feet in length, on its own land, near a small village, making the grade of 280 feet thereof at the rate of 80 feet to the mile, and afterward, for several years, operates its railroad and switch-track, and then, in accordance with its usual custom, places a flat-car on said switch-track and grade, and properly fastens the same with an ordinary hand-brake, and on the next day a small boy, four years eight months and a few days old, goes to said car, without any right or authority so to do, and without the knowledge or consent of the railroad company, and not accompanied by any person, and climbs upon said car, and unfastens the brake, and the car then, by its own weight, moves down said grade, and the boy either jumps off or falls off, in front of said car, and is run over by the car, and killed, *held*, that the company is not guilty of any culpable negligence as toward said boy, nor liable for damages on account of his death.

*Error from Atchison District Court.*

ACTION brought by *David Henigh*, as administrator of the estate of Charles W. Henigh, deceased, against *The Central Branch Union Pacific Rld. Co.*, to recover $10,000 damages, alleged to have been sustained by reason of the death of said Charles W. Henigh, whose death was alleged to have been caused through the negligence of the said railroad company. The facts, pleadings and proceedings sufficiently appear in the opinion. Trial at the March Term, 1878, of the district court, and verdict and judgment for plaintiff for $600 damages, and for costs. New trial denied, and the defendant brings the case to this court.

*Everest & Waggener,* and *D. Martin,* for plaintiff in error:

The only pretended negligence of which the railroad com-
pany was guilty, is, "first, in not constructing a proper
grade on said side-track; second, in not applying brakes
properly thereon on cars." So far as the construction of the
track is concerned, we insist that the railroad company had
the right to construct the same in any manner it saw proper,
so long as it subserved the purposes of the company; espe-
cially is this so when constructed on its own land, or on
land of which it had the exclusive possession and control.
The railroad company owed no duty and was under no obli-
gation to Charles W. Henigh, deceased, and in the construc-
tion of its track, had the right to construct it with reference
to its own convenience, and not with reference to persons
who might trespass thereon; hence we contend that the "im-
proper" grade on which said track was constructed can in no
sense constitute an element of negligence in this action. In
any event, in the management of its cars on the switch-track
in question, so far as the deceased was concerned, the railroad
company was not required to exercise more than ordinary
care.

Even conceding that the railroad company was bound to
exercise ordinary care to prevent the injury complained of,
the findings of fact, taken in connection with the other find-
ings of fact of the jury, establish the fact that the railroad
company, in leaving those cars in the manner in which they
were left standing, acted reasonably and prudently, and that
the death of Charles W. Henigh was the result of an accident
which the railroad company, acting reasonably, could not
have anticipated or avoided. The jury say that said flat-car,
as left standing, was in a reasonably safe condition if the
box-cars had not been moved. This finding of fact must be
construed in the light of the surrounding circumstances, and
must necessarily mean that under all the circumstances of this
case the railroad company acted reasonably in doing what it
did do, and that the position in which the cars were left by

the agents and employés of the railroad company was such as to justify the belief that they would not be interfered with in the manner in which they were interfered with. Certainly it could not have been anticipated that anyone would unfasten the brakes on the box-cars and run them down the track, so as to leave the flat-car in a less safe position than that in which it was left on the evening previous to the injury. The jury expressly find that this change in the position of the cars was without the knowledge or consent of any employé of the railroad company. There was no exigency shown to have existed calling upon the railroad company to place guards over its cars at a little country station like Farmington; certainly no evidence in the case showing, or tending to show, that the railroad company might have expected such unauthorized interference with its property. It acted reasonably and prudently in doing just what it did do, and if injury resulted therefrom it is not liable.

The facts and circumstances of this case are distinguishable from those in the case of *Railroad Co. v. Stout,* 17 Wall. 657, which is mainly relied upon by defendant in error as establishing his right to recover.

The act of the railroad company was not the proximate cause of the injury complained of in this case. It was an accident which ordinary prudence would have done nothing more to guard against than was actually done by the railroad company. "Precaution is a duty only so far as there is reason for apprehension." The railroad company, it is true, owed the deceased the duty to abstain from injuring him intentionally or carelessly, but it did not owe him any duty of active vigilance. The case of *Nicholson, Adm'x, v. Erie Railway Co.,* 41 N. Y. 525, rests upon this principle. In that case the company had left, upon a branch track, four empty cars and one loaded. The brakes to the four cars were not set or secured, and they were started by a violent wind and ran against a loaded car, propelling and causing it to run against and over the plaintiff's intestate, who was upon the track, and killing him. The place where the branch track

was constructed was open and unfenced, and was constantly used by the people in the vicinity, as they had occasion to use it, without objection by the company. The court instructed the jury that it was the duty of the company to set the brakes, and that if it left the cars without doing so, or otherwise securing them, it was a violation of duty on its part. This instruction was held erroneous. It is said in the opinion that no relation existed between the company and the deceased creating any particular duty, and that the company had the same unqualified right which every owner of property has to do with his own as he pleases, and keep it and use it where and when he pleases on his own ground, up to the point where such use becomes a nuisance. See also to the same effect: 29 Ohio St. 364, 374; 26 id. 393; 4 Hurlst. & N. 67; 10 Allen, 372; 6 Barr, 472; 48 Vt. 127; 99 Mass. 216; 29 Ohio St. 374; 2 Law Rep. C. P. 370; 7 Hurlst. & N. 732; 97 Eng. C. L. 729.

The deceased had the right to assume that the railroad company would not purposely or carelessly injure him, but he could not ask it to be active to ward off from him the perils that the railroad company was under no obligation to anticipate and under no duty to be actively vigilant in avoiding. (47 Ill. 265.)

*Cochran & Heath,* and *Charles T. Griffin,* for defendant in error:

If the degree of care to be used must be commensurate with the danger to be avoided, as laid down by this court again and again, then it is difficult to discern in the facts presented in this case anything exonerating the railroad company from liability, much less withdrawing the entire case from the consideration of the jury. From the evidence and findings of the jury, it is patent — first, that but for the defective condition of the track the cars could not have been removed, and therefore that the negligence of the railroad company was the potential cause of the accident, without which its happening would have been impossible; second, that the boys of the neighborhood, as was well known to the company,

habitually played with the cars, having been several times ordered to quit.

Now, we contend — first, that the construction of the track in this manner, under all the circumstances, in and of itself was negligence; second, that whether it was negligence to so construct it, under all the surrounding circumstances, was a question for the jury; third, if it was a question for the jury, their finding is conclusive.

It is urged here, as it was in the court below, that the wrongful construction of the track was atoned for, as it were, by applying brakes upon the cars. This fact was presented to the jury. The jury weighed it and all other facts which the railroad sought to prove, and yet, in the exercise of a province not to be usurped by the court, determined the issue adversely to plaintiff in error. Now, under all the circumstances of this case, was it the plain duty of the district court to vacate the verdict rendered, and award judgment to plaintiff in error on the findings of the jury? We contend that the findings of fact plainly sustain the verdict, and that nothing in them militates against it. Counsel for plaintiff in error adroitly present certain questions as to the manner in which the cars next to the one causing the accident were secured; but the court will notice that the findings submitted on this question, and the answers found, disclose only that the brakes were set so as to hold the cars, if not interfered with, as they usually were. This may be true, and yet the manner of securing the cars be open to the charge of negligence; and in fact the jury find that the brake was defective. And this leads us to notice the reference made by the counsel to the case of *Railroad Co. v. Stout*, 17 Wall. 657. Leaving the turn-table unsecured, yet so as to be harmless if unmolested, in a locality where children frequently resorted, although upon the private grounds of the company, was held to be negligence. (See also 11 Kas. 645; 14 id. 53.)

The question as to when the findings will control where some are favorable and some are unfavorable to the verdict, is one unsusceptible of exact adjudication; but the general

principle is well settled that it is the duty of the court to seek rather for reasons to affirm than to reverse the decisions of juries and the rulings of inferior courts. The rule laid down by the court in the case of *Ridgway v. Deatinger*, 42 Ind. 157, is a succinct statement of the law applicable to that question: "It is only when the special findings of fact are inconsistent with the general verdict that the former will control the latter. If the special findings can upon any hypothesis be reconciled with the general verdict, then the latter will control."

In support of the propositions above contended for, we cite — first, upon the question as to the propriety of submitting to the jury the question of negligence: 14 Kas. 37; *Railroad Co. v. Stout*, 17 Wall. 651 ; Cent. L. J., April 23, 1874, p. 202; 2 Dillon C. C. 294; 38 N. Y. 455; 23 Vt. 387; 17 Mich. 99; 21 Pick. 256; 11 Gray, 157; 19 Wis. 497; 13 Ga. 68; 36 N. Y. 132; 3 E. D. Smith, 103; 19 Conn. 507. The facts in this case authorize and sustain a verdict, notwithstanding the fact that the child was upon defendant's track, or a trespasser: 14 Kas. 53; 17 Wall. 651, and authorities there cited; also, 19 Conn. 507; 26 Conn. 591; 17 Wend. 496; 14 Conn. 1; 2 Redfield's Railroad Cases, 481, 474; 4 Bing. 268; 1 Sanders, 83. The court will not disturb the verdict if upon any hypothesis it can be harmonized with the findings: 42 Ind. 157; 30 Iowa, 279.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought in the district court of Atchison county, by the defendant in error, as administrator of the estate of Charles W. Henigh, deceased, against the plaintiff in error, to recover the sum of $10,000 damages, alleged to have been sustained by reason of the death of said Charles W. Henigh, an infant of the age of four years eight months and a few days, which death is alleged to have been caused through the negligence of the said plaintiff in error. The petition of the plaintiff below defendant in error) sets forth the facts supposed to consti-

tute the said alleged negligence of the defendant below (plaintiff in error), the said death of the said Charles W. Henigh, which occurred June 24, 1877, and the appointment of the plaintiff below, David Henigh, as the administrator of said Charles W. Henigh's estate. The answer of the defendant below denies negligence on the part of the defendant, sets up negligence on the part of said Charles W. Henigh, and his father and mother, said David Henigh and Mrs. Henigh, and denies the authority of the said David Henigh to act as administrator, or to sue in this action. This last denial was duly verified by affidavit. The plaintiff replied to the defendant's answer by filing a general denial. The action was tried upon these pleadings, before the court and a jury. The jury returned a general verdict in favor of the plaintiff and against the defendant, and assessed the damages at $600, and also made numerous special findings in answer to special questions submitted to them. The court rendered judgment in accordance with the general verdict of the jury, and to reverse this judgment the defendant now, as plaintiff in error, brings the case to this court.

The various questions now presented to this court were raised in the court below by the defendant below (plaintiff in error), as follows: By objecting to the plaintiff's evidence, and to portions thereof; by demurring to the plaintiff's evidence; by excepting to the refusal of the court below to give certain instructions to the jury; by excepting to the refusal of the court below to submit certain special questions of fact to the jury; by moving for a judgment in favor of the defendant upon the special findings of the jury; and by a motion for a new trial, made upon various grounds. In all these matters the court below ruled against the defendant, and the defendant took proper exceptions. The principal questions involved in this case are as follows:

1. Can an administrator be appointed to prosecute an action under § 422 of the civil code, (Comp. Laws of 1879, p. 656,) where the intestate died *without leaving any estate of any kind,* and not owing any debts?

2. Was the defendant guilty of any culpable negligence, as toward the plaintiff's intestate?

3. Was the plaintiff's intestate, or the intestate's father or mother, guilty of any contributory negligence?

We shall not discuss or decide the first question; and as to the other two, we shall discuss them together, as many of the facts involved therein are common to both. The facts necessary to be stated in the discussion of these questions are substantially as follows:

For several years prior to the death of said Charles W. Henigh, the defendant below (the Central Branch Union Pacific railroad company) owned and operated a railroad from Atchison city, westwardly through Atchison and several other counties in the state of Kansas. On this railroad, and in Atchison county, the company had a station called Farmington. At this station there was a station-house or depot, and also a switch-track, owned and used by the railroad company. This switch-track was south of the depot and main track, running nearly parallel with the main track, connecting with the main track at its east end and not at the west end, and was 667 feet in length. The two ends of this switch-track were nearly on the same level or horizontal plane, but the middle was about four feet lower. The steepest grade commenced at a point about 57 feet east of the west end of the switch-track, and ran eastwardly about 280 feet, and was about $4\frac{1}{4}$ feet to said 280 feet, or at the rate of about 80 feet to the mile. Cars were frequently allowed to stand upon this switch-track, and upon this steep grade; but they would not stand upon the steep grade without being properly fastened. They were usually fastened by means of the common hand-brakes attached to the cars. Boys, from ten years of age upward to sixteen, would sometimes get upon these cars and loosen the brakes, and let the cars run down into the depression of the switch-track; but this was never done with the consent or permission of the railroad company. The railroad company always objected, when the matter came to its knowledge. No public road touched this switch-

track; but a by-path crossed the same, on which people frequently traveled. Surrounding this station was a village called Farmington, which contained a store, also used as a post-office, and about four or five other houses. The store was about 200 feet distant from the depot and switch-track, and the inhabited houses were from 125 yards to 600 yards distant therefrom. David Henigh, with his family, consisting of a wife and five children, resided about 200 or 300 yards southeast therefrom. They had resided there for about six or seven years. Allison resided about the same distance north of the railroad. On June 23, 1877, the railroad company pushed upon said switch-track, and upon the steep grade thereof, a flat-car and two box-cars, and securely fastened them, by means of the ordinary hand-brakes, attached to each car respectively. Afterward, the brakes on the box-cars were loosened, without the consent or knowledge of the railroad company, and the box-cars ran down upon said depression. The flat-car remained where it was first placed. On the next day (June 24, 1877), Mrs. Henigh left her home, with two of her children, (said Charles W. Henigh and another little son, younger than Charles,) to go across the railroad to Mr. Allison's house. All crossed the railroad track, and then Charles stopped. She however supposed that he was following her, and passed on, continuing to think so, until she arrived at Mr. Allison's gate, when she looked back and saw him going toward the depot. She then went into Mr. Allison's house and remained there about ten minutes, when she came out and saw her son Charles on said flat-car, and the car moving down the grade toward said box-cars. The boy had evidently, after leaving his mother, gone to said flat-car, climbed upon it, and loosened the brake, and then the car, by its own weight, moved down said grade. The boy then fell off or jumped off from said car (and which is not known), immediately in front thereof, and the car passed on and over him, killing him almost instantly. The car, after passing over him, passed on to said box-cars.

These are substantially all the facts constituting, or show-

ing, or tending to show negligence. Are they sufficient for that purpose? Was any person guilty of culpable negligence? We think not. It will hardly be claimed that a child so young as Charles W. Henigh was could be guilty of negligence, and whether the negligence of his parents, or guardians, or custodians could be imputed to him, we do not now choose to decide. His father was certainly not guilty of negligence, for he did not at the time have the custody of the child; and we do not think that his mother was, for, under the circumstances, we do not think that she should have entertained the slightest suspicion that her child was in any real danger. But if she was not guilty of negligence, then certainly the railroad company was not; for she knew all the material facts that the railroad company did, and more. She had lived in sight of this station, and this switch-track, and this steep grade, for several years, and consequently must have known the exact condition of affairs in that vicinity. She must have known the character of the switch-track with its steep grade, and must have seen the cars that were standing on the track on that very day. But above all, she knew where her son was and his likelihood to get among the cars and upon them, and this the railroad company did not know. As to the whereabouts of her son, the railroad company did not have the slightest knowledge. Hence, if she was not negligent, then there could be no reason for imputing negligence to the railroad company. But let us examine more particularly into the supposed negligence of the railroad company. It is possible that the railroad company could have exercised greater care, but so could Mrs. Henigh. The railroad company could have made the switch-track level, or could have locked the cars with lock and key, or could have moved the cars a few miles away from Farmington, or indeed could have built their railroad somewhere else, and then said death would not have happened. And on the other hand, Mrs. Henigh could have kept her child away from the cars, and he would have been safe; and the failure to exercise the greatest care, is in one sense negligence. It has often been

said by courts and law-writers that the failure to exercise the utmost care is negligence. This is probably true, but the failure to exercise an unreasonably great amount of care is never culpable negligence; and when we speak of negligence without any qualifying word or words, we usually mean culpable negligence. Indeed some courts, like the supreme court of the United States, do not recognize any negligence except culpable negligence. They say that any negligence less than culpable negligence is not negligence at all. They recognize degrees of care and diligence, but do not recognize degrees of negligence. In their language, the failure to exercise great care is negligence where great care is required, but is not negligence where only slight or ordinary care is required. They say that the failure to exercise slight care can never be more than negligence, and that to call it "gross negligence" is merely to call it negligence, adding a vituperative epithet. There is no substantial difference, however, in the decisions of the various courts upon this subject; it is only a difference in the use of terms. (See further on this subject, *U. P. Rly. Co. v. Young*, 19 Kas. 495, *et seq.*) In all courts culpable negligence consists in the failure to exercise the amount of care required, whether that amount be slight, ordinary or great, and whether the corresponding degree of negligence be called gross, ordinary, or slight, or merely negligence. In the present case, we take it that all the parties having any connection with said accident were required to exercise that degree of care and diligence which an ordinarily prudent person would exercise under like circumstances. This is ordinary care, and the failure to exercise it would be ordinary negligence, or culpable negligence, or, as some courts would say, merely negligence, and if all the parties in this case exercised ordinary care, then no one was guilty of culpable negligence. Now all negligence, to be culpable, necessarily implies the failure to properly perform some duty. Now what duty did the railroad company owe to Charles W. Henigh which it did not properly perform? No relation existed between them. He was not a passenger,

nor an employé, and had no business with the railroad company of any kind or character.   He had no right to climb upon said car as he did, nor to touch it, nor even to go upon the company's premises.   Technically he was a mere trespasser, and the company owed to him no duty except such as it owes to trespassers in general, or except such as it owes to all mankind.   We have heretofore held that all persons must use their property and conduct their affairs with reference to the rights of all other persons, and with reference to all known or anticipated surroundings, and that even trespassers have a right to expect that such will be done. (*K. C. Rly. Co. v. Fitzsimmons,* 22 Kas. 686, 690, et seq.; *K. P. Rly. Co. v. Brady,* 17 Kas. 380, 384, et seq.)   And we still adhere to this doctrine.   But no person is bound to anticipate something which is not likely to occur, or to so conduct his affairs as to prevent accidents which are not likely to happen.   This has reference where no specific duty exists, but only such general duties as all mankind owe to each other.   Then in the light of the foregoing, wherein was the railroad company negligent as toward Charles W. Henigh?   The jury and the defendant in error say that it was in constructing said steep grade, and in not fastening said railroad cars so that they could not be unfastened by boys.   But what specific right had Charles W. Henigh to say how said switch-track should be constructed, or how said cars should be fastened?   None at all.   He had only that general right in the company's affairs which all mankind possess in the affairs of others; and that is, that the railroad company should so construct its road, and so fasten its cars, that no injury would be likely to occur to such persons as were likely to be in that vicinity. The accident that actually occurred could not have been anticipated.   The cars were so well fastened that no danger was possible, unless some person climbed upon them and unfastened the brakes; and then danger was almost impossible to any ordinary person.   The cars were not dangerous machines, left exposed near a populous city.   Nor were they of that alluring character to entice boys to play upon them; for

when unfastened they would move only a few feet and then stop. Nor were they dangerous, even when moving, to ordinary boys. Certainly, boys from 10 to 16 years of age were not likely to be hurt by them. No one would have anticipated that a boy, less than five years old, would have gone to the cars, unaccompanied by any older person, and have climbed upon one of them, and unloosened the brake, so as to set the car in motion. No such a thing had ever before occurred. And certainly no one could have anticipated that a boy big enough to do that would have fallen off or jumped off in front of the car so that the car would run over him and kill him. Most boys would have stayed on the car, so as to get a ride. And this the company had a right to expect. We do not think that the company was negligent. But it is said that the jury found that the company was negligent. This is partially true. The jury, in one set of words, said that the company was negligent, but in another set of words they said substantially the reverse. In general terms, the jury said that the company was guilty of negligence; but in their detailed statement of facts, they said substantially that the company was not guilty of negligence. And the general statement was a mere conclusion from the detailed statement. Hence in reality, the jury found that there was no negligence. Negligence is of course a fact to be submitted to the jury. (C. B. U. P. Rld. Co. v. Hotham, 22 Kas. 41.) And it may be found and stated by the jury in great detail, or in less detail, or in general terms. And if the jury state the facts in detail, and then attempt to state them again as one comprehensive fact, or compound fact, the detailed facts will govern. Generally, when the facts are established, it is a question of law for the court to determine whether they constitute negligence, or not, and generally, when the jury find the facts in detail, they cannot then say, in general terms and conclusively, that such facts constitute negligence, unless they in fact do constitute negligence. In the present case there was no evidence proving negligence — that is, culpable negligence; and the court below should have sustained the demurrer of the de-

fendant to the plaintiff's evidence. And there was nothing that transpired after said demurrer was overruled to cure this error of the court below. We think, however, that the special findings of the jury will also authorize a judgment in favor of the defendant below, and against the plaintiff.

The judgment of the court below will therefore be reversed, and cause remanded with the order that judgment be rendered in favor of the defendant below for costs.

All the Justices concurring.